## CERRITOS GUN CLUB et al. v. HALL et al.

### No. 1045.

District Court, S. D. California, Central Division.

Nov. 18, 1936.

164

Newlin & Ashburn, of Los Angeles, Cal., for plaintiffs.

M. G. Gallaher, Asst. U. S. Atty., of Los Angeles, Cal., for defendants.

JAMES, District Judge.

Complainants are associations or corporations organized and being operated for the purpose of furnishing hunting grounds on which their members can shoot migratory waterfowl. They allege that their lands have been prepared at great expense and that in their natural state such lands in the main were arid and without vegetation; that by the digging of wells water has been impounded; that their properties are not valuable for other purposes. It is alleged that the defendants, the United States Attorney, the United States Marshal, together, with the defendants Federal Game Protector and Federal Game Warden, threaten to enforce a regulation made by the Secretary of Agriculture under the provisions of the Migratory Bird Treaty Act (as amended, title 16, §§ 703 to 711, U.S.C.A.), with its criminal penalties, which regulation as approved August 12, 1936, reads as follows:

"Waterfowl (except for propagation, scientific, or banding purposes under permit pursuant to regulations 8 and 9 of these regulations) and mourning doves are not permitted to be taken by means, aid, or use, directly or indirectly, of corn, wheat, oats, or other grain or products thereof, salt, or any kind of feed whatsoever, placed, deposited, distributed, scattered, or otherwise put out whereby such waterfowl or doves are lured, attracted, or enticed * * *."

It is asserted that the statute and regulations are grounded for authority on the Migratory Bird Treaty entered into between the United States and Great Britain, and that such regulations exceed the power designed to be given by that convention. Further, that plaintiffs are vested with valuable property right worth many thousands of dollars, which by the enforcement of the regulation quoted, they will be deprived of without recompense and will be subject to criminal prosecution and harassment. To prevent such action they seek an injunction against the defendants. A temporary restraining order was issued, and as part thereof was an order requiring defendants to show cause why a temporary injunction should not follow.

Defendants appeared on the return day and interposed objections to the proceedings and it was particularly urged that the court had no jurisdiction in the matter; that no property right in waterfowl resides in any person so as to authorize any suit in protection thereof; and that an adequate remedy at law exists for any injury suffered by the plaintiffs.

I have carefully studied the treaty, the Act of Congress, and the regulation in question, and will state the conclusions I have reached in the matter. Counsel for complainants admit there is no property right in the citizen to wild fowl unless reduced to possession. It is also admitted that the federal game authority may create closed seasons during which the taking of wild fowl may be altogether prohibited. The regulation in question does not prohibit the capturing of waterfowl during a prescribed open season, but it imposes the restriction that said fowl shall not be "baited" or attracted by the putting out of "corn, wheat, oats, or any other grain or products thereof, salt, or any kind of feed whatsoever * * * whereby such waterfowl * * * are lured, attracted or enticed." The Act of Congress made for the purpose of giving effect to the Migratory Bird Treaty gives authority to the Secretary of Agriculture, among other things, to determine "to what extent, if at all, and by what means, it is compatible with the terms of the convention to allow hunting, taking, capturing, killing, possession, sale, purchase, shipment, transportation, carriage or export of any such bird, or any part, nest, or egg thereof, and to adopt suitable regulations permitting and governing the same, in accordance with such determinations, which regulation shall become effective when approved by the President." 16 U.S.C.A. § 704.

In the case of U. S. v. Griffin, 12 F. Supp. 135, decided by the District Court of the Southern District of Georgia, there was considered a regulation almost identical with that involved here. The case was decided in the year 1935, whereas the amended regulation as referred to in this case appears to have been approved by the President on August 12, 1936. The effect

of the amended regulation, however, is not changed from that in force in the year 1935. The court in the Griffin Case sustained the law of Congress and affirmed the right of Congress to delegate to the Secretary of Agriculture the authority to make and enforce such a regulation. Other applicable cases are Brandenberg et al. v. Doyle, 12 F.Supp. 342 (D.C.S.D.Ill.); Shouse et al. v. Moore, Marshal, 11 F. Supp. 784 (D.C.E.D.Ky.). And pertinent to the general subject is the decision in Thomson et al. v. Dana et al., 52 F.(2d) 759 (D.C.Oregon). In the case of Missouri v. Holland, 252 U.S. 416, at page 435, 40 S.Ct. 382, 384, 64 L.Ed. 641, 11 A.L.R. 984, the court closes its opinion with the following:

"But for the treaty and the statute there soon might be no birds for any powers to deal with. We see nothing in the Constitution that compels the Government to sit by while a food supply is cut off and the protectors of our forests and our crops are destroyed. It is not sufficient to rely upon the States. The reliance is vain, and were it otherwise, the question is whether the United States is forbidden to act. We are of opinion that the treaty and statute must be upheld."

It would seem, in view of the conditions of the treaty, that it is contemplated that the United States may restrict the taking of edible wild fowl through certain specified periods of time and may create closed seasons when such game may not be taken at all. It appears logical that where an open season is provided, the qualification be imposed as a condition that during such open season baiting or luring of the wild fowl should not be permitted, because plainly that would result in a greater number being collected together and captured. The regulation referred to applies generally to all sections of the United States.

Objections interposed by the defendants, while not so prefaced in that form, will be considered by the court as a motion to dismiss the bill of complaint, and it appearing to the court that the plaintiffs cannot by amendment avoid the objections that have been urged and considered, leave to amend will be denied; the restraining order is dissolved and judgment will be entered dismissing the action, and an exception noted in favor of the plaintiffs.

At the hearing there was offered an amendment to the bill of complaint, the purpose of which was to bring into the proceeding as complainants other duck clubs and other shooting organizations. Objection was made to allowing the amendment to be filed, and that objection is sustained with an exception to petitioning parties.